Robert S. KING, Appellant,

v.

Gertrude K. PRUITT, Respondent.

No. 22197.

Kansas City Court of Appeals.
Missouri.
June 6, 1955.

Carl H. Willbrand, Kansas City, for appellant.

Allan M. Fisher, Kansas City, for respondent.

DEW, Presiding Judge.

This action was begun by the filing of a petition in the Magistrate Court to recover a commission for the sale of real estate. From a judgment in defendant's favor, plaintiff appealed to the Circuit Court. The verdict in the Circuit Court was for the defendant and judgment was entered accordingly. The plaintiff has appealed to this court.

The defendant, although the prevailing party in the trial court, raises the question of the sufficiency of the petition to state a cause of action, which point it is our duty to consider. It alleges that on April 29, 1952, defendant entered into a contract of sale procured by the above named plaintiff, selling Lot 5, Resurvey of Lindwood Avenue Heights in Kansas City, Missouri; that the total sale price transaction was $11,500; that the plaintiff is entitled to a commission of 5 percent of such sale price, or the sum of $575; that demand has been made and payment refused; that plaintiff will be put to the expense of retention of a lawyer in the sum of $150. The prayer asked for judgment for $575 commission, $150 attorney's fees, a total of $725, with costs. Liberally construed as a pleading filed in the Magistrate Court, we believe the foregoing petition filed herein fairly implies the employment or acceptance of the services of the plaintiff by the defendant in the procurement of a sale of defendant's real estate for $11,500, the reasonable value of which such services was 5 percent of the sale price. There is no authority, of course, for the recovery of the item of attorney's fees under the facts pleaded. Otherwise, we believe the petition should be deemed sufficient. The defendant's pleading was a general denial.

Plaintiff testified that he was, and since 1919 had been, in the real estate business in Kansas City, Missouri, and a member of the Real Estate Board of that city; that some time in February or March, 1952, he contacted the defendant by telephone. Defendant owned a residence property in Kansas City immediately behind the Thornton & Minor hospital. George Williams, business director of that institution, had explained to him that the hospital was in dire need of parking space in its vicinity, inquired of him if any suitable property were available for that purpose, and told him he did not wish it known that the hospital was to be the purchaser because of the effect on the prices of additional tracts that might be desired. Plaintiff asked defendant over the telephone if she desired to sell her residence property in question. She replied that she did not. He gave her his name and address and told her he was a member of the Real Estate Board, and invited her to call him at any time. Three or four weeks later, the defendant telephoned the plaintiff and told him she had decided to sell her place. He told her he would contact his prospects. They were a Mrs. Seaman, who wanted such a property for a rooming house, and Mr. Williams of the Thornton & Minor hospital. He prepared a sales contract in which defendant is named as seller, and Mary L. Childs, purchaser. The latter's name was used as purchaser, at the instance of Mr. Williams, who obtained her signature thereto. She was secretary of the hospital organization. Plaintiff then went to the defendant's home the next morning and told her of the contract, rode down town with her and explained the contract and the check attached, told her she would have to pay for revenue stamps, abstract costs, prorate the rentals and taxes, and as a member of the Real Estate Board, he would charge a commission of 5 percent on the sale price. On reaching the True Hotel, which defendant owned and operated, she told plaintiff she did not wish to sign the contract until her lawyer had looked it over. She called her attorney Mr. Donald Latshaw, and arranged for plaintiff and defendant to meet at his office the next day.

Plaintiff testified that while in Mr. Latshaw's office the latter went over the contract, item by item, and at defendant's insistence inserted a provision for her to retain possession until August 31, 1952, and that in speaking of her expenses, plaintiff told her his commission would be the regular commission of 5 percent which she agreed to pay; that defendant signed the contract and then told the defendant she would need another home, and that he had a chance to make a double commission in finding her another place. One evening, somewhat later, defendant listed with plaintiff two other properties for him to sell. She gave the prices on which she said she would pay a commission.

The parties later met in Mr. Latshaw's office to close the deal in question and the purchaser was represented by Mr. Sutherland, attorney. Plaintiff had prepared a closing statement and handed it to Mr. Latshaw. It showed the purchase price of $11,500, deduction of commission of $575, and balance per attached cashier's check for $10,925. When the time came for the defendant to sign the deed, she, for the first time, said she was not going to pay a commission. After conversations between the attorneys, plaintiff finally agreed to pay over to defendant the entire balance of moneys in his hands, but said that he was doing so with the understanding that he would later sue her for his commission. The money was thus paid, the deed signed and delivered and the transaction closed. Later, plaintiff demanded of defendant payment of the commission, which she refused to pay.

Plaintiff testified he made no agreement with Mr. Williams for any commission and had been paid none by anyone. He said that after defendant called him up and authorized him to list her property he did not tell her the name of any prospective buyer and did not believe it was required of him to do so; that, in fact, he thought George Williams was personally interested in the deal, but knew that Miss Childs was a straw party. He said defendant did not ask the name of the buyer.

The contract in evidence is on a form adopted by the Real Estate Board of Kansas City, Missouri, and named the defendant as seller, and M. L. Childs as buyer, and provided, among other things, that the deposit should be made at the office of the Robert S. King Realty Company; the abstract was to be delivered to the office of that company; the objections, if any, thereto to be delivered to that office, or a title policy if furnished in lieu of an abstract, and the deed, when executed, to be delivered there.

Miss Mary Louise Childs testified that she had no personal interest in the transaction and was named as a straw party in the contract and deed at the request of Mr.

Williams, director and manager of the Thornton & Minor hospital, of which she was secretary. She said she made no arrangement of any kind with the plaintiff regarding any commission. She later signed a letter, in evidence, requesting possession as per agreement, but did so at the request of Mr. Williams in her capacity as a mere straw party.

Mr. Williams, testifying in behalf of plaintiff, explained the need of the Thornton & Minor hospital for parking facilities, and said he inquired of plaintiff if any available property adjacent to or near that hospital might be purchased for such use. He explained that he did not wish it be generally known that the hospital was interested in the purchase because of the possible effect on the prices of other properties to be acquired, and that he asked Miss Childs to act as straw party in the contract later executed, and as grantee in the deed later delivered. He said Miss Childs later transferred the title to the hospital. He said he made no arrangements of any kind to pay the plaintiff or anyone any commission on the property purchased, because the hospital was not the seller, but was the buyer. Mr. Williams furnished his own personal check for $3,000 earnest money, and later for the $8,500 balance of the purchase price.

Mr. Latshaw, attorney, said he examined the contract in question when the defendant brought it to his office in company with the plaintiff; that he studied each item and asked both parties as to their understanding thereof, and that he made no changes except the provision for limited possession in the seller. He said he inquired about the commission and that plaintiff stated that the seller was to pay the usual commission, whereupon witness asked Mrs. Pruitt if that was correct and she said "Yes". Defendant then signed the contract. He said on the day of the closing, the purchaser was represented by Mr. Sutherland, attorney, and the plaintiff presented a closing statement, together with a check for a part of the sale price. He said another check was to be given for the difference. He said defendant then refused

to sign the deed and for the first time said she would not pay a commission. Witness then asked Mr. Sutherland if the purchaser would pay a commission, and he said he would not. Defendant then asked witness if she had to sign the deed and he told her she did not have to sign anything. Mr. Sutherland then said if she did not, she would be sued for specific performance. After some conversation plaintiff stated that he was entitled to a commission, and that defendant had agreed to pay it, and that he intended to sue to recover it. Plaintiff then paid the full amount and the deal was closed. The witness said that at the time the contract was signed no mention was made that Thornton & Minor hospital was interested, but some subsequent statement was made to that effect; that he did not know who Mary L. Childs was; that at the closing, he thought that plaintiff went out and purchased revenue stamps and the taxes and interest were prorated, but the contract made no reference to a commission to be paid. On redirect examination Mr. Latshaw said that some time between the execution of the contract and the closing of the deal, defendant remarked that she believed that Thornton & Minor was buying the property. He told her it did not make any difference; that she had signed the contract, and that it was immaterial who bought it.

Mr. Wallace Sutherland, attorney for the purchaser, testified in behalf of the plaintiff that he appeared at the closing of the transaction representing the purchaser, and recalls that Mr. Latshaw asked him if the purchaser would be willing to pay the commission, to which he replied in the negative; that thereafter defendant refused to close the transaction unless she received the full amount of the purchase price; that the full amount of the balance was thereupon obtained and paid over and the transaction was closed. He recalled that the plaintiff announced that he would sue the defendant for the commission.

Defendant testified that she had owned the residence property involved; that plaintiff called her by telephone and expressed personal interest in the property, saying he had been familiar with it as a boy, and as a carrier of newspapers, and had often wished he could possess it, asking her if it were now for sale; that she told him it was not for sale; that he continued to call her and came by to see her several times at the house and at the hotel property which she operated, urging her to sell the residence. Finally, hoping to get rid of the plaintiff, she told him she would take $11,500 for the property net cash to her; that he offered a down payment, which she refused; that he later told her that she had promised to sell and would be sued if she did not go through with it; that she then said she would not sign a contract until her attorney had examined it. Plaintiff had a contract already signed by Mary L. Childs, who, from what plaintiff said, she thought was "his girl friend". She said she later signed the contract at her attorney's office; that nothing was then said about any commission to plaintiff; that she never asked the plaintiff to sell the property, never hired him to sell it, and, in fact, did not want to sell it.

The defendant further testified that plaintiff kept telling her she would be sued if she did not go through with the deal. She said that prior to the first meeting at her attorney's office she did not know plaintiff was "a real estate man", "not until I saw the contract". She described how, at the closing of the deal, she was handed a check for $10,925, which was not the full price and she refused to accept it. Plaintiff then left the office and came back with a check for the full amount. She said plaintiff never told her that Thornton & Minor was interested in the deal, nor who Mary L. Childs was.

On cross-examination defendant disclosed that for five years she had owned and operated a 29-room hotel called the "True" hotel in Kansas City; that she had other property interests. She was asked if she had not listed other property with the plaintiff for sale. She said she had property interests in an estate. When asked if she had not listed 3743 Wabash with the plaintiff to sell she said she had, but the property belonged to the estate.

She could not remember the price she put upon it. She said: "I thought if he wanted to do some work and he would leave me alone, I would give him something to do". She said she could not remember whether she listed the Wabash Avenue property with plaintiff before or after she signed a contract for her residence. When asked if she had not listed 3023 Garner Street with the plaintiff for sale she said: "I told him if he wanted to sell something that was something I was interested in". "He could sell that. I didn't want to sell my home". She denied that she telephoned plaintiff authority to sell her home or that she had ever called him but that in her back yard she told him she would take $11,500 because "I thought he was a poor person like me and he wouldn't have the money, so, therefore, if I asked for cash in my hand, he would leave me alone". She admitted that she refused to sign the contract until she first saw her attorney. She said that she told her attorney that threats had been made to sue her if she did not sell the property, and her attorney later told her that "I was not very good if I wouldn't keep my word", and he said that the price was very good compared with what I had paid for the property.

Defendant denied that she later told her attorney and the plaintiff that she was to pay the commission. She said she couldn't remember when she found out that Thornton & Minor was interested in the deal; that she was not satisfied with the price but "I didn't want to go into court and they threatened to sue me if I didn't, and my father always told me to keep my word". Asked if she didn't say that it made no difference to her who bought the property, Miss Childs or Thornton & Minor, so long as she got a price, she replied: "I didn't want to sell. If I wanted to sell I could have gotten more. I thought I could have gotten more from Thornton & Minor".

The plaintiff's first point is that the court erred in giving defendant's Instruction 4, there being no evidence showing fraud or deceit. That instruction is as follows:

"The Court instructs the jury that a real estate agent or broker must act with entire good faith toward his principal, and that he must disclose all facts within his knowledge material to the matter in which he is employed, or which might influence his principal's action, so if you find and believe from the evidence that defendant employed plaintiff to sell her property for her and was her agent, if so, and if you further find and believe from the evidence that plaintiff did not disclose to defendant that Thornton and Minor Clinic, Inc. was the actual purchaser, if so, and that said failure to disclose was material, if so, and would have influenced defendant's action, if so, then your verdict must be in favor of the defendant and against the plaintiff".

The defendant contends that the instruction was proper and relies for her authority on Joy v. Bixby, Mo.App., 10 S.W.2d 342. In that case there was evidence that the agent had misrepresented the capacity of a garage building, which was the subject of the sale, and represented the value of the property to be $30,000, based upon its then rental value, whereas, its value did not exceed $21,000, and the lessee was insolvent. Defendant argues further that if the Joy case is not authority for Instruction 4 because of the absence of fraud, then the instruction places a greater burden on the defendant than necessary, namely to prove fraud before she was entitled to a verdict. Many cases are cited by the defendant, setting forth the duty of an agent engaged to sell real estate. That duty has been stated as follows:

"The general rule is well settled that a broker must act with entire good faith toward his principal, and must disclose to his principal all facts within his knowledge which may be material relating to the matter in which he is employed, or which might influence his principal in his action, and if the broker fails to come up to this standard of duty he cannot recover his commission. And there are

cases in which brokers have been denied the right to recover their commissions on sales for failure to disclose to their principals the names of the purchasers. It has never been held however, that the mere failure to disclose the name of the purchaser, without more, would defeat the broker's recovery. Fraud is an affirmative defense and must be proved. It is never presumed. As a rule, mere deception without injury or prejudice is not fraud. Certainly the mere failure on the part of the broker to disclose to his principal the name of the real purchaser of the property sold, without any showing that the principal was or could have been in any way prejudiced or injured thereby, ought not to defeat the broker in his suit for commissions". Klein v. Terminal R. Ass'n, Mo.App., 268 S.W. 660, 664.

As said in the Klein case, supra, 268 S.W. at page 664: "There was no warrant in the evidence for the submission to the jury of the issue of fraud or bad faith on the part of the plaintiff in failing to disclose to defendant the identity of the purchaser of its property, * * *". The evidence is overwhelming in the instant case that defendant knew that the plaintiff was a real estate agent when she first authorized the sale of her residence for $11,-500, followed by later listings by her of other properties with the plaintiff for sale, as well as the disclosures in the contract as to the capacity of plaintiff in the transaction. There was no evidence of fraud on plaintiff's part nor any proof that defendant was prejudiced by plaintiff's failure to disclose the purchaser who was willing to buy on defendant's terms. As to the plaintiff's conduct as agent for the defendant, the latter had but one complaint and that is that the name of the real purchaser, from whom she said she believed she could have gotten more than the price she had authorized, was not disclosed. Since the purchaser was not to give back a note or mortgage or otherwise involve a purchaser's credit, the defendant could not complain that the real purchaser was not disclosed, without some evidence that such withholding of such identity was otherwise in some way prejudicial to her. Klein v. Terminal R. Ass'n, supra.

Plaintiff makes the second point that the verdict and judgment in this case is against the evidence and against the weight of the evidence and against the law in this case. This presents nothing for our review under Supreme Court Rule 1.08, 42 V.A.M.S. Ambrose v. M. F. A. Co-operative Ass'n, Mo., 266 S.W.2d 647. Judgment is reversed and the cause remanded.

CAVE, J., and ROSE, Special Judge, concur.